IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMAINE WILLIAMS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 16-3629 |
| WEXFORD HEALTH SOURCES, INC., | : | |
| and CORRECT CARE SOLUTIONS, LLC, | : | |
| Defendants. | : | |

MCHUGH, J.                                                                                              DECEMBER 7, 2016

## MEMORANDUM

Jermaine Williams, a Pennsylvania state prisoner at SCI Graterford, has epilepsy and suffers from neck spasms and chronic seizures. In this suit, he alleges that Defendants Wexford Health Sources, Inc., and Correct Care Solutions, LLC,[1] the medical providers at Graterford, improperly discontinued his anti-seizure medication and failed to provide him with necessary housing accommodations, causing him to suffer multiple seizures and related injuries. He also alleges that Defendants failed to provide physical therapy or timely surgery to address those and other injuries. Defendants have moved to dismiss the operative Amended Complaint for failure to state a claim. Although Williams's allegations are serious, I conclude that he has failed to exhaust his claims related to the discontinuation of his medication and failure to provide housing accommodations, and has failed to state adequately *Monell* claims related to denial of physical therapy and timely surgery. I therefore will dismiss his Amended Complaint.

## I.   Background

Williams has epilepsy and experiences regular seizures. When he began his current period of confinement in Philadelphia, he was prescribed an anti-seizure medication and given

---

[1] Sometime during the course of the events giving rise to this case, Correct Care replaced Wexford as Graterford's medical provider. For convenience, I refer to Correct Care and Wexford collectively as "Defendants."

bottom-bunk and bottom-tier housing accommodations. When he was subsequently transferred in late 2013 to the custody of the Pennsylvania Department of Corrections (DOC) at Graterford, Defendants were told of his condition and the accommodations he required.

Soon after Williams arrived at Graterford, Defendants discontinued his medication, purportedly because he suffered seizures infrequently and the medication would not be worth the money, and housed him on the second floor. Once off his medication, Williams "began to experience headaches, dizzy spells, and shakes." Am. Compl. ¶ 20. He tried to get Defendants' attention by submitting a sick call, but to no avail.

A few weeks after that, while trying to get to the dining hall on the ground floor, Williams experienced a withdrawal seizure and fell down the stairs, injuring his back and spine. He was quickly taken to the hospital, where the medical staff put him back on medication. Though Williams was discharged that same day, he was racked with back pain and constant neck and back spasms, and "confined to a wheelchair unless he was in his cell"—in which case he used a cane. Am. Compl. ¶¶ 25–26.

With Williams back at Graterford, Defendants once again discontinued his medication. Williams then filed his first of several administrative Grievances, this one alleging that Defendants' failure to give him his required medication caused him to fall down the stairs. Defs.' Br. Ex. A (Ex. A) at 31–32.[2] A mere four days later, Williams suffered another seizure—this one lasting for over 25 minutes and leading to yet another hospital trip. Only after this second discharge did Defendants finally give him his medication and house him on a lower floor.

---

[2] While Williams claims this Grievance—No. 501960—also dealt with his "dire need for Physical Therapy to treat his injuries sustained [in] his fall," Am. Compl. ¶ 29, No. 501960 does not mention therapy, *see* Ex. A at 31–32.

2

They did not, however, offer him physical therapy[3] to treat his back and neck injuries. Williams was subsequently transferred to another state prison for a few months.

In January 2015, while Williams was being transferred back to Graterford, his transport vehicle got into an accident, causing Williams to be "thrown from [his] wheelchair into the metal guide on the side door of the van" and "instantly knock[ing him] unconscious." Ex. A at 45. He was taken to a hospital, where he was given a neck brace and painkillers. Over the next three months, Williams filed three Grievances alleging, as relevant here, that Defendants failed to provide necessary surgery and physical therapy following the accident. *See* Ex. A at 45–46, 64, 68. Fully seven months after the accident, while Williams was still trying to exhaust all four of his Grievances, Defendants finally offered him surgery for his back and neck injuries.

Williams then brought this action, alleging that Defendants violated the Eighth Amendment by twice discontinuing his medication and initially failing to give him housing accommodations; failing to provide physical therapy to treat injuries he suffered by falling down the stairs and being thrown in the transport accident; and failing to provide surgery for months after the accident.[4] Because Williams's theory of liability comes from *Monell v. Department of Social Services*, 436 U.S. 658 (1978), he is required to establish that these violations were pursuant to a policy or custom. Defendants now move to dismiss for failure to state a claim.

## II. Standard of Review

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must first separate the factual and legal elements of a claim, accepting as true all well-

---

[3] In his Amended Complaint, Williams repeatedly claims he was not provided with any physical therapy at all. In contrast, copies of responses to his Grievances show that *some* therapy *was* provided, *see, e.g.*, Ex. A at 65, leading to the conclusion that Williams is actually claiming that the therapy that was provided was not enough. This distinction is irrelevant here except for purposes of exhaustion, *see infra* Section III.B.3. Thus, except for there, for simplicity I will refer to Williams's claim as one for "denial of physical therapy."

[4] Williams initially brought claims under the Pennsylvania Constitution too, but has withdrawn them. Br. Opp. 17.

3

pleaded facts while disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Discussion

I ultimately conclude that, notwithstanding the serious inadequacies in medical care that Williams has alleged with respect to his treatment at Graterford, Defendants' Motion must be granted. While not all of Williams's claims are procedurally barred, his (seemingly stronger) claims regarding discontinuation of his anti-seizure medication and failure to provide housing accommodations have not been exhausted, and he has not sufficiently pled facts to support *Monell* claims regarding failure to provide physical therapy or timely surgery.

A. *Statute of Limitations*

Defendants initially argue (Br. 19–21) that all claims that arose before June 30, 2014, are barred by the statute of limitations because Williams filed his initial Complaint on June 30, 2016, and the applicable limitations period is two years, *see Wallace v. Kato*, 549 U.S. 384, 387 (2007) (period for § 1983 claims "is that which the State provides for personal-injury torts"); 42 Pa. Cons. Stat. Ann. § 5524(7) (period for personal-injury torts is two years). Such pre–June 2014 claims include those involving Defendants' discontinuation of Williams's medication and failure to provide him with housing accommodations (beginning in December 2013), allegedly leading to the seizures and fall that Williams suffered (in March 2014).[5]

---

[5] Defendants also claim that any claim for failure to provide physical therapy following Williams's March 2014 fall is likewise barred. Williams does bring a claim for denial of therapy following his fall in addition to one for inadequate therapy following the January 2015 transport accident. But Williams never brought a grievance about the former claim, and so it is not exhausted and not properly before me. As I pointed out *supra* note 2, Grievance No. 501960, which Williams brought soon after he fell, does not mention anything about therapy.

4

Defendants' argument fails, however, because it ignores that the statute of limitations was tolled while Williams exhausted—or tried to exhaust—administrative remedies. "[T]he [Prison Litigation Reform Act of 1995 (PLRA)] is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies." *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015).  As I address in more detail below, Williams filed four Grievances relevant here:  (1) No. 501960 (discontinuation of medication and failure to provide housing accommodations), tolled 237 days; (2) No. 551040 (failure to provide surgery after transport accident), tolled 319 days; (3) No. 555884 (failure to provide physical therapy after transport accident), tolled 107 days; (4) No. 562313 (similar to No. 555884), tolled 158 days.[6]  Only the first of these, No. 501960, implicates a tolling question, because the claims brought in the other three all arose out of the January 2015 transport accident and thus have not yet expired regardless of any tolling.

As to No. 501960, there is no limitations bar to Williams bringing claims for Defendants' discontinuation of his medication or failure to provide him with housing accommodations.  Williams was transferred into DOC custody—and thus these claims arose at the earliest—on December 19, 2013, and the claims were tolled for 237 days while Williams worked his way through the grievance process.  This means that for limitations purposes these claims effectively arose on July 26, 2014, making them timely filed if filed before July 26, 2016.  Because Williams filed his Complaint on June 30, 2016, these claims were timely.

---

[6] Specifically, (1) No. 501960 was filed March 15, 2014, and dismissed but not exhausted November 7, 2014 (Ex. A at 31–32, 77); (2) No. 551040 was filed January 19, 2015, and exhausted December 4, 2015 (Ex. A at 43, 45–46); (3) No. 555884 was filed March 10, 2015, and exhausted June 25, 2015 (Ex. A at 68, 72); and (4) No. 562313 was filed April 17, 2015, and exhausted September 22, 2015 (Ex. A at 61, 64).

5

B.  *Exhaustion*

Defendants alternatively argue (Br. 5–13) that Williams has failed to exhaust all claims except his claim for failure to provide surgery.  The hallmark of the PLRA is its administrative exhaustion requirement:  "No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court, moreover, has interpreted § 1997e(a) to require "proper exhaustion"—that is, a "prisoner must comply with all the administrative requirements and not merely wait until there are no administrative remedies 'available.'"  *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 92–103 (2006)).  Because proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules," *Woodford*, 548 U.S. at 90, a prisoner who does not "substantial[ly]" comply with the administrative grievance process will procedurally default his claims, *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004).  In the DOC, that process "includes three levels:  an initial, formal grievance; an appeal to the superintendent; and a final level appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA)."  *Strickengloss v. State Corr. Inst.*, 531 F. App'x 193, 194 (3d Cir. 2013) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 203–04 (3d Cir. 2002)).  I address each of Williams's claims in turn.

1. *Discontinuation of Medication and Failure to Provide Housing Accommodations (Grievance No. 501960)*

It is clear that Williams has failed to exhaust two of his claims—those involving Defendants' discontinuation of his medication and failure to provide him with housing accommodations.  No. 501960, the only Grievance to present these claims, was dismissed by SOIGA not on the merits but rather because Williams failed timely to provide required documentation.  *See* Ex. A at 77.  Because Williams did not substantially comply with SOIGA's

6

required procedures as to these two claims, Williams did not exhaust them. *See Coudriet v. Vardaro*, 545 F. App'x 99, 104 (3d Cir. 2013) ("[T]wo grievances were dismissed at the SOIGA level for procedural default. Thus, Coudriet has failed to exhaust his claims[.]").

Williams marshals three counterarguments, but none is persuasive. First, he points out that the PLRA requires only exhaustion of "available" administrative remedies, and claims that here "there were no further avenues by which [he] could seek relief within the grievance system." Br. Opp. 7 & n.1. But the entire point of the PLRA's *proper* exhaustion requirement is to require a prisoner to make full use of administrative procedures before filing suit: a remedy is not rendered "unavailable" if a grievance is dismissed because the prisoner failed to follow the prison's required procedures. *See Woodford*, 548 U.S. at 100 (question is not whether remedies are "*presently* available" but whether "the party first *pursue[d]* all available avenues of administrative review"). Here, SOIGA did in fact provide an avenue for relief, which was closed only by virtue of Williams's procedural misstep.

Second, Williams cites *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000), for the proposition that "administrative exhaustion may not always take the form of the filing of a formal grievance"; rather, a claim will be exhausted "when an inmate attempts in good faith to give prison authorities ample opportunity to resolve" it before bringing suit. Br. Opp. 8. But *Camp* cannot be read so broadly. In fact, the Court of Appeals held there that the plaintiff's claim was exhausted only after concluding that the claim had been "fully examined *on the merits* by the ultimate administrative authority." 219 F.3d at 281. Here, SOIGA never reached the merits of No. 501960, but again that was because of Williams's procedural default.

Finally, Williams argues that exhaustion cannot be decided at the Rule 12(b) stage because it is an affirmative defense, "requir[ing] proof of failure to exhaust for which Plaintiff

7

would be permitted to rebut with additional evidence." Br. Opp. 9. It is true that failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). But exhaustion "is a question of law to be determined by a judge," *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013), and a court deciding a Rule 12(b) motion may consider "indisputably authentic documents related to . . . grievances . . . without converting it to a motion for summary judgment," *Spruill*, 372 F.3d at 223. Here, Williams and Defendants have provided copies of No. 501960 and all related filings. Williams argues that I may not consider No. 501960 because it is "disputed by Defendant[s]." Br. Opp. 9. The dispute to which Williams refers, however, is over the timeliness of his submission at the state level. For relevant purposes here, there is no question that No. 501960 was dismissed on the ground that Williams did not timely submit required documents.

I therefore conclude that Williams has not exhausted his claims involving his medication and housing accommodations, and they will be dismissed.

2.  *Denial of Surgery (Grievance No. 551040)*

Defendants concede (Br. 11) that Williams exhausted (in No. 551040) his claim for failure to provide back surgery following the transport accident. By itself that does not establish jurisdiction, because "[e]xhaustion is no[t] . . . left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 85. I therefore formally rule that this claim was exhausted, because it is clear that SOIGA rejected it on the merits after deciding the "medical care provided was reasonable and appropriate." *See* Ex. A at 43.

3. *Denial of Physical Therapy (Grievance Nos. 555884 & 562313)*

Following the transport accident, Williams submitted two Grievances alleging he was being denied adequate physical therapy. First, in No. 555884, Williams alleged that although he

8

had started *some* physical therapy, he feared it was not what he needed: "I know I need to start moving my neck . . . but if I am not receiving any real therapeutic treatment that is suppose[d] to be follow up care in my recovery, how am I suppose[d] to heal[?]" Ex. A at 72. In its final decision rejecting this claim, SOIGA noted that the issue before it was Williams's "concern of not being provided proper medical care." *Id.* at 68. Second, in No. 562313, Williams complained that the "Medical Dept. is not providing any therapy for my pain & suffering." *Id.* at 64. SOIGA ultimately rejected this claim as well, concluding: "Your concern of not being provided proper medical care regarding your neck problems was reviewed . . . . [T]he medical care provided was reasonable and appropriate." *Id.* at 61.

Recognizing this, Defendants admit (Br. 7–8) that both Grievances were "properly exhausted" in the general sense. Nevertheless, Defendants argue (Br. 10) that neither Grievance presented a claim for *denial* of physical therapy, and that instead each involved only complaints about the quality of the physical therapy itself. Thus, Defendants conclude, Williams's claim that Defendants "failed to provide necessary Physical Therapy" (Am. Compl. ¶ 53(B)) has not been exhausted.

I find this argument unavailing, and conclude that Williams's physical therapy claim has been exhausted. As an initial matter, grievances filed by a prisoner without counsel are akin to *pro se* court filings, which are to be "liberally construed." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Even so, however, I do not need to engage in interpretive gymnastics to recognize that Williams's claim here—that Defendants "failed to provide necessary Physical Therapy"—is in all relevant respects the same as those presented in his Grievances: that he was "not receiving any real therapeutic treatment" (No. 555884) and that Defendants were "not providing any therapy" (No. 562313). That each Grievance contained other allegations about the

9

quality of the therapy that *was* provided is besides the point. The PLRA's exhaustion requirement exists to give prison administrators the opportunity to "address[] the issues on the merits," *Woodford*, 548 U.S. at 90 (citation omitted), and here the administrators addressed and rejected the merits of both of Williams's Grievances regarding inadequate physical therapy. This claim has therefore been exhausted.

C. *Merits*

Moving to the merits of Williams's properly exhausted surgery and physical therapy claims, my first task is to decide whether he has stated plausible Eighth Amendment claims. *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) ("[F]or [*Monell*] liability to exist, there must . . . be a violation of the plaintiff's constitutional rights."). I conclude that he has. Failure to provide adequate treatment violates the Eighth Amendment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Williams has plausibly alleged that the combined effects of his fall on the stairs and the transport accident created serious injuries that merited physical therapy or surgery. He has also plausibly alleged that he never received adequate physical therapy, and was only finally offered surgery eight months after the transport accident. This plausibly establishes a constitutional violation.

But that is just the beginning of the inquiry, because Williams brings no direct claims—only *Monell* claims. Like a municipality, a private entity can only be liable under § 1983 "when the alleged constitutional transgression implements a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *accord Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). At the Rule 12(b)(6) stage, a plaintiff cannot just recite *Monell*'s elements,

but must "identify a custom or policy, and specify exactly what that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009); *see also id.* (finding too conclusory allegation that city had "policy of ignoring First Amendment right[s]" (alteration in original)). *McTernan* instructs district courts to focus on factual support.

I conclude that Williams's surviving *Monell* claims are lacking. Unfortunately for Williams, there is a significant contrast between the degree of detail supporting the claims he failed to exhaust and that of the claims properly before me. For example, as to Defendants' decision to suspend Williams's anti-seizure medication (an unexhausted claim), Williams alleges that Defendants regularly refused to follow the recommendations of transferring institutions and outside hospitals. Am Compl. ¶ 15. Williams even cites one of Defendants' employees as stating that denial of the medication was the result of a money-saving policy. Am Compl. ¶ 17.

No comparable facts are pled, however, as to the alleged deficits in Williams's physical therapy or the delay in him being referred for surgery. There is thus no indication that these alleged inadequacies in care were the result of policy or custom as compared to individual decisionmaking.[7] And members of this Court have consistently found allegations similar to Williams's too conclusory to state a *Monell* claim. *See Brower v. Corizon Health Servs., Inc.*, No. 15-5039, 2016 WL 5166330, at *9 (E.D. Pa. Sept. 20, 2016) (Pappert, J.) (claim that prison medical providers "put the budget first before adequate healthcare" insufficient); *Jones v. Barth*, No. 14-3423, 2015 WL 221079, at *6 (E.D. Pa. Jan. 15, 2015) (Quiñones Alejandro, J.) (claim that "Defendant Chester Township 'as a matter of policy and practice failed to discipline, train,

---

[7] It is also worth noting that the strength of the inferences that can be drawn from a particular set of facts is in large part a function of the nature of the facts themselves. On its face, denying anti-seizure medication to a known epileptic raises a serious question as to whether the decision is being guided by sound medical judgment, or instead by some other consideration. Continuing to deny such medication even *after* the patient has suffered a seizure and fallen lends additional force to an inference that something systemic is at play. In contrast, decisions regarding the extent of physical therapy and timing of surgery are subject to more variables, and that variability weakens the force of the inferences that can be drawn from Defendants' conduct.

11

supervise, or otherwise sanction [the defendant] police officer'" insufficient); *Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 562 (E.D. Pa. 2011) (Dalzell, J.) (claim that the "actions of Defendant PSPCA constituted part of a pattern and practice of unlawful and improper behavior" insufficient).

### IV. Conclusion

Williams's Amended Complaint must be dismissed. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge