# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMAINE WILLIAMS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 16-3629 |
| WEXFORD HEALTH SOURCES, INC., | : | |
| and CORRECT CARE SOLUTIONS, LLC, | : | |
| Defendants. | : | |

MCHUGH, J.    APRIL 20, 2017

## MEMORANDUM

In this Eighth Amendment case, Jermaine Williams, a Pennsylvania state prisoner at SCI Graterford and an epileptic, claims Defendants Wexford Health Sources, Inc., and Correct Care Solutions, LLC, the medical providers at Graterford, repeatedly denied him necessary anti-seizure medication. Because Williams did not exhaust administrative remedies on that claim, however, I dismissed it on an earlier motion and it is no longer directly at issue here. On the same motion, I also dismissed other claims involving Correct Care's[1] failure to provide Williams physical therapy or surgery to address injuries he suffered at Graterford. Since those claims had been exhausted and were just insufficiently pled, I gave Williams leave to amend. Williams did, and Correct Care now moves to dismiss again. This time, I will deny Correct Care's motion.

**I.    Background**

My earlier opinion has a more detailed background. *See* 2016 WL 7156395, at *1–2. To briefly recap, the earliest events in this case stem from the most troubling allegation: that when Williams, a known epileptic, was first sent to Graterford, Defendants denied him his prescribed

---

[1] Correct Care replaced Wexford as Graterford's medical contractor in September 2014. Because both of Williams's remaining claims involve only conduct in or after January 2015, I will refer to Defendants as Correct Care unless I am describing pre–September 2014 allegations.

1

anti-seizure medication. That unjustified denial caused Williams to suffer needless seizures, one of which caused Williams to fall down the stairs, aggravating preexisting (and creating new) back and neck injuries. To top it off, Williams claims, the physical therapy Defendants gave him after that fall was inadequate.

But because Williams failed to navigate the complex and unforgiving world of administrative exhaustion, none of that remains directly at issue now. *See* Williams Br. *8.[2] Instead, both of Williams's surviving claims flow from a January 2015 vehicle accident that occurred while being taken from another prison back to Graterford. In a grievance filed that day, Williams claimed he was violently thrown inside the vehicle, causing whiplash and a concussion—and injuring his back and neck even more. Correct Care examined him then, but in the first instance gave him only a neckbrace and painkillers. In his grievance, Williams wrote: "I don't believe I am receiving proper medical care, and my injuries are being minimized in a way that amounts to medical neglect." Dkt. 23-6 at *4–5.

Over the next five months, it appears (the record at this stage is admittedly hazy) that Williams received some physical therapy—but not much. On February 12, three weeks after the accident, he had an on-site consultation. The treating physician, after noting in her records that Williams had pain and a decreased range of motion in his neck, wrote that he "needs to begin rehab," and so referred him to physical therapy. Dkt. 23-4 at *6. Sometime in late February Williams indeed saw a physical therapist, and the two agreed to a regimen of weekly sessions. But that only lasted a few weeks: soon after, Williams claims, his therapist "accused [him] of being litigious" and made him a "target of ha[r]assment." Dkt. 23-7 at *4. The sessions stopped.

---

[2] Because very few of the documents involved here are page-numbered, I use the ECF page numbers, and note them with a "*."

In early April, Williams had another consultation, where he reiterated his complaint of neck pain and a "very" limited range of motion. Dkt. 23-4 at *7. He was referred for an MRI of his cervical spine, which took place at the end of April. *Id.* Shortly after the MRI, he had a third consultation, and this time was referred to an offsite neurosurgeon. The referring doctor noted that Williams had a "known seizure disorder," had been injured both falling down the stairs and in the accident, and, by this point, had "lumbar back pain radiating into his left leg and difficulty walking." Dkt. 23-4 at *8.

Nearly a month and a half later, on June 17, Williams finally saw the neurosurgeon. Dkt. 23-5 at *2. The neurosurgeon discussed the MRI with Williams and told him he did not recommend surgery for his lumbar spine. *Id.* "However," he noted, "due to [Williams's] failure with physical therapy," as well as the notable degree of neck pain and related weaknesses, he recommended surgery for his cervical spine. *Id.* This surgery, as with others, presented risks of bleeding and to the nervous system; it would also involve "plates and screws." *Id.* Ultimately, Williams rejected the surgery, noting in a subsequent grievance that it was "extremely intrusive" and provided only a "50/50 chance of effective recovery." Dkt. 18-5 at *11. Instead, Williams proposed a less intrusive alternative surgery; Correct Care rejected his suggestion. *Id.*

Williams now claims Correct Care violated the Eighth Amendment by failing to provide him with adequate physical therapy and by denying him timely and adequate surgery. These violations, he claims, flowed from Correct Care's policy or custom of generally disregarding prisoners' needs for physical therapy and surgery, whether because of considerations of cost or some other nonmedical reason. Correct Care now moves to dismiss for failure to state a claim.

## II. Standard of Review

On a Rule 12(b)(6) motion, my task is merely to decide whether the plaintiff has stated a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In doing this, I must "draw on [my] judicial experience and common sense," *id.*, and "construe the complaint in the light most favorable to the plaintiff," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). It does not matter whether the complaint is "as rich with detail as some prefer"—the only question is whether, "under any reasonable reading" of it, there are "sufficient facts to support [a] plausible claim[]." *Id.* at 210–12.

## III. Discussion

Applying that standard of review, I conclude that Correct Care's motion will be denied.

### A. Physical Therapy Claim

To state an Eighth Amendment claim in this context, a plaintiff must allege "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Further, because there is no vicarious liability under § 1983, where the defendant is a corporation acting as a government contractor, the plaintiff must also allege that his constitutional rights were violated because of a policy or custom. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). That Williams's accident-related injuries were a serious medical need is not really in dispute; I also rather easily conclude that, by alleging Correct Care made few attempts at giving him physical therapy, Williams has also stated a claim for deliberate indifference. Last, I find that the allegations of Correct Care's repeated failure to provide physical therapy over a many-month stretch, particularly when viewed in light of the broader allegations of Defendants' repeated refusal to provide necessary medication, are enough to state a *Monell* claim.

Correct Care says otherwise. On deliberate indifference, Correct Care points to the physical therapy (and related medical attention) that Williams *did* receive, which it claims (Br. *19) was "reasonable and appropriate." In Correct Care's view, Williams's claim is, at root, mere disagreement with his course of treatment, which cannot support an Eighth Amendment claim. That oft-repeated maxim may roughly describe the law in a general sense, *see, e.g.*, *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017); *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979),[3] but Correct Care's framing distorts the key allegation here: that Williams received a truly paltry amount of physical therapy when compared to the extent of the injuries he sustained under Graterford's care. Williams's is not an "I disagree with the treatment I received" claim: it is an "I did not receive treatment I needed" claim.

In this way, many of the cases Correct Care relies on have little value here. Initially, it bears mention that some involved summary judgment (or even post-trial) motions. *See Logan v. Clarke*, 119 F.3d 647 (8th Cir. 1997); *Brown v. Borough of Chambersburg*, 903 F.3d 274 (3d Cir. 1990); *Baez v. Falor*, No. 09-1149, 2012 WL 4356768 (W.D. Pa. Sept. 24, 2012); *Gindraw v. Dendler*, 967 F. Supp. 833 (E.D. Pa. 1997). At the comparatively superficial stage of a Rule 12(b)(6) motion, where I am merely asking whether Williams has a plausible claim, I hesitate to apply decisions where courts were evaluating full records.[4] Further, the three non-precedential per curiam Court of Appeals cases Correct Care cites—*Ham v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Pa. Dep't of Corr.*, 230 F. App'x 195 (3d Cir. 2007); and *Gillespie v. Hogan*, 182 F. App'x 103 (3d Cir. 2006)—all featured prisoners who had received some form of dental

---

[3] Notably, in two of the cases Correct Care cites for this proposition, *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990), and *Maynard v. New Jersey*, 719 F. Supp. 292 (D.N.J. 1989), the courts actually *sustained* certain Eighth Amendment claims.

[4] Likewise, *Iseley v. Dragovich*, 236 F. Supp. 2d 472 (E.D. Pa. 2002), sheds little light on the issue here, because that case involved not only a motion for a preliminary injunction, but also a plaintiff who was *refusing*—not requesting—certain treatment.

5

surgery that they then claimed was unsatisfactory. In the deliberate-indifference context, I consider qualms about surgery that was in fact provided quite distinct from complaints about physical therapy that was not.

To be sure, Williams does not claim that Correct Care failed to provide any therapy or care whatsoever, so Correct Care seizes upon dicta to the effect that "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Clarke v. Doe*, No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000). Such shorthand descriptions of the law, however, are of little use when it comes to evaluating the facts of a specific case. The Court of Appeals has found that deliberate indifference can exist "in a variety of circumstances"—including where prison officials "*delay*[] necessary medical treatment based on a non-medical reason" or "prevent[] a prisoner from receiving *needed or recommended medical treatment*." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (Alito, J.) (emphases added). Use of the words "delay" and "needed or recommended" necessarily implies that merely because some treatment was received an Eighth Amendment claim is not automatically defeated.

But the issue need not be resolved by implication: the Court of Appeals has already so held. In a similar context involving a claim of delayed physical therapy, the court expressly rejected the proposition that the "providing of some treatment precludes a finding of deliberate indifference." *Durmer v. O'Carroll*, 991 F.2d 64, 67–68 (3d Cir. 1993).[5] *Durmer* takes on even more significance when one considers it was resolved by summary judgment in the district court, meaning there was a substantial body of evidence informing the Court of Appeals' ruling. But

---

[5] The Court of Appeals recently breathed new life into this principle, reiterating that "there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements," and giving specific examples of those circumstances. *Palakovic v. Wetzel*, ___ F.3d ___, No. 16-2726, 2017 WL 1360772, at *12 (3d Cir. Apr. 14, 2017).

6

here, to reiterate, the question is one merely of plausibility.[6] I conclude that Williams has sufficiently alleged that Correct Care was deliberately indifferent to his physical therapy needs.

As to whether Williams has met his additional *Monell* burden of sufficiently alleging that a policy or custom was the root of the deliberate indifference, Correct Care does not offer much of an argument besides denying that any such policy or custom exists. To survive a motion to dismiss, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). In my earlier ruling, I found that Williams's physical therapy claim did not, as then pled, meet that standard. 2016 WL 7156395, at *6. But given the significant new allegations that Williams has added in his second amended complaint (¶¶ 29–30, 32–36, 41–42, 44), as well as the new emphasis placed on certain record materials in his briefing on this motion (like Dkt. 23-4 at *6–8 and Dkt. 23-5 at *2), I find he has sufficiently alleged that Correct Care's continued deliberate indifference to his physical therapy needs was because of a policy or custom of doing so. Whether that policy or custom was a product of Correct Care making medical decisions based on nonmedical considerations, *Natale*, 318 F.3d at 583, "turn[ing] a blind eye to an obviously inadequate practice," *id.* at 584, or something else entirely, is an issue for discovery.

**B. Surgery Claim**

Williams also claims Correct Care failed to provide adequate or timely surgery for his back and neck. Here Correct Care is admittedly on stronger ground, since it is undisputed that Williams was eventually offered neck surgery, but turned it down. (This refusal, of course, was not absolute, as Williams proposed less intrusive surgery, as was his right.) It is also not fully

---

[6] In this regard, the fact that a key factor in deliberate-indifference cases will often be prison officials' true motives for denying requested treatment, *see, e.g.*, *Pearson*, 850 F.3d at 541; *Natale*, 318 F.3d at 583; *Durmer*, 991 F.2d at 68, also weighs against deciding these cases at the Rule 12(b)(6) stage.

7

clear what Williams means by a failure to provide "timely" surgery, since he does not appear to specify when surgery should have been offered.  Nonetheless, both issues are better addressed following discovery instead of on a motion to dismiss.  And with respect to the timeliness of surgery, I find it significant that, although Williams's claims for the denial of his medication and suffering a painful fall down the stairs as a result do not remain before me, the injuries underlying those claims may have put Correct Care on notice that Williams needed surgery at an earlier stage in his care regimen.  Keeping in mind that in evaluating a Rule 12(b)(6) motion I must draw on my "judicial experience and common sense," I will also allow Williams's surgery claim to proceed.

## IV. Conclusion

Correct Care's motion to dismiss will be denied.  An appropriate order follows.


    /s/ Gerald Austin McHugh
United States District Judge